D. Scott Dattan
LAW OFFICE OF DATTAN SCOTT DATTAN
2600 Denali Street, Suite 460
Anchorage, AK  99503
Phone:  (907)276-8008
Fax:  (907)278-8571
E-mail:  dattan@dattanlaw.com

Attorney for Defendant, Guy Christopher Mannino

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| GUY CHRISTOPHER MANNINO, ) | DEFENDANT'S SENTENCING |
| ) | MEMORANDUM |
| Defendant. ) | |
| _____) | Case No. 4:13-cr-00021-RRB |

Defendant Guy Christopher "Chris" Mannino, by and through counsel, submits this memorandum for the court's consideration at sentencing on February 25, 2015.

**I     INTRODUCTION**

Mr. Mannino was indicted August 20, 2013, and pled guilty to the four counts of the superseding information filed March 10, 2014.  Mr. Mannino was represented by the Public Defender until August, 2014, when undersigned counsel was appointed.

//

Pursuant to the Plea Agreement Mr. Mannino pled guilty to three firearms offenses: transfer of unregistered firearms, possession of an unregistered machine gun and illegal possession of an unregistered machine gun, and one count of concealment of bankruptcy assets. The Factual Basis (beginning on page 7) of the Plea Agreement provides the facts upon which the guilty plea is based.

## II  SENTENCING GUIDELINES

No issue is taken with the Guidelines calculations for Counts 1, 2 and 3. The base offense level is indeed 18, as indicated in Paragraph 85 of the PSR. It may even be appropriate to add two levels (as indicated in Paragraph 86) for the number of firearms involved, although the factual basis clearly states that there was a "sten machine gun (Serial No. MG131) equipped with a silencer" and mentions no other firearms. As a result, it is difficult to see how three individual firearms were involved.

Issue is taken, however, with the Guidelines calculations in the PSR in Paragraphs 87, 88 and 89, which are based on purported "relevant conduct" which is not relevant to any count of conviction.

### A.  Relevant Conduct

Section 1B1.3 of the United States Sentencing Guidelines is entitled "Relevant Conduct (Factors that Determine the Guideline Range)". In essence, that section states the following:

> Unless otherwise specified, (i) the base offense level . . . , (ii) specific offense characteristics and . . . adjustments . . . shall be determined on the basis of the following:
>
> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . .

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . .

Relevant conduct must relate to the offense of conviction. The Ninth Circuit Court of Appeals has indicated that when interpretation of the Sentencing Guidelines is necessary, the rules of statutory construction will be applied.

> When interpreting the Sentencing Guidelines, we apply" ' The rules of statutory construction.' " United States v. Valenzuela, 495 F.3d 1127, 1133 (9th Cir.2007) (quoting United States v. Robinson, 94 F.3d 1325, 1328 (9th Cir.1996)). Under these rules, "[t]he plain meaning of unambiguous language in a guideline provision controls." Id. While the "starting point is always the language of the statute itself," Jeffries v. Wood, 114 F.3d 1484, 1495 (9th Cir.1997), "[r]ather than focusing just on the word or phrase at issue, this court looks to the entire statute to determine . . . intent." Sanchez v. Pacific Powder Co., 147 F.3d 1097, 1099 (9th Cir.1998) (citing Duffield v. Robertson Stephens Co., 144 F.3d 1182, 1192-93 (9th Cir.1998) ("When examining the language of the governing statute, we must not be guided by a single sentence . . . , but look to the provisions of the whole law, and to its object and policy.") (citations omitted)). "Thus, the structure and purpose of a statute may also provide guidance in determining the plain meaning of its provisions." The Wilderness Society v. United States Fish & Wildlife Srv., 353 F.3d 1051, 1060-1061 (9th Cir.2003) (en banc) (citing United States v. Lewis, 67 F.3d 225, 228-29 (9th Cir.1995) ("Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme.")). Using these principles to evaluate the purpose, structure, and interactions of Guidelines §§ 4A1.2, 1B1.3 and 2L1.2. . . .

United States v. Cruz-Gramajo, 570 F.3d 1162, 1167 (9th Cir.2009). In its discussion of relevant conduct, the Court stated:

> The purpose of § 1B1.3 of the Guidelines, Relevant Conduct, is to "capture the real offense behavior" involved in defendant's conduct. United States v. Romero, 293 F.3d 1120, 1124 (9th Cir.2002). The Sentencing Commission accomplished this task by formulating a relevant conduct guideline which "identified the categories of misconduct that the sentencing judge *could* examine in

> determining whether to make . . . adjustments to the base offense level," specific offense characteristics, cross references, and
>
> adjustments and enhancements. United States v. Kim, 896 F.2d 678, 682 (2nd Cir.1990). . . .

Id., at 1179-71.

In the instant case, the charge and the guilty plea are for transfer and/or possession of a machine gun. There is no connection between the uncharged and unproven crime of Solicitation to Commit a Crime of Violence, 18 USC § 373, which is the underlying crime under USSG 2X1.1 upon which the PSR relies in Paragraphs 88 and 89.

In United States v. Wernick, 691 F.3d 108, 115 (2nd Cir.2012), the court addressed this aspect of relevant conduct as follows:

> . . . One criminal act does not become "relevant" to a second act under the Guidelines by the bare fact of temporal overlap. If a bank robber assaults a guard in the course of robbing a bank, the assaultive conduct occurs during the robbery and is "relevant conduct" that may be used to enhance the seriousness of the robbery offense for purposes of the Sentencing Guidelines because it is part of the activity constituting the crime of conviction. But if a bank executive is engaged in embezzling money from her company from February to September, and she assaults a coworker at an office party in July, this does not become "relevant" to raise the offense level of the embezzlement merely because it occurred "during" the same period of time as the embezzlement. Without proof of a connection between the acts, the second event is literally a coincidence.

Mr. Mannino was not charged with violation of 18 USC 373, nor did he plead guilty to it. In fact, he vigorously denies it. But that is almost beside the point. The Government seeks to sentence him based on uncharged, unproven conduct which is not part of the same course of conduct as the offense of conviction. If the Government seeks to sentence Mr. Mannino for solicitation of

//

murder, it should charge and try him for that offense. (As they are doing in 4:14-cr-00026-RRB, to which he has pled not guilty).

>In discussing relevant conduct, the Seventh Circuit stated:
>
>When calculating an offender's base offense level, the district court takes into account all acts and omissions that were a part of the same course of conduct or a common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3(a)(2). "Same course of conduct" and "common scheme or plan" are close cousins, but not identical. Two offenses are part of the same course of conduct where they are "connected or sufficiently related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 cmt. n. 9(B). They are part of a common scheme or plan if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 cmt. n. 9(A).

United States v. Purham, 754 F.3d 411, 414 (7th Cir.2014). The court further stated:

>. . . To determine whether two acts are part of the same course of conduct, we look for "a strong relationship between the uncharged conduct and the convicted offense, focusing on whether the Government has demonstrated . . . significant similarity, regularity, and temporal proximity." United States v. Bacallao, 149 F3d 717, 719 (7th Cir.1998).

Id. The court also explained common scheme or plan:

>. . . Two or more offenses are part of a common scheme or plan if they include at least one common factor such as "common victims, common accomplices, common purpose, or similar modus operandi." USSG § 1B1.3(a)(2) . . . .

Id.

Under the circumstances, this "relevant conduct" enhancement offered by the PSR is used to solely jack up the sentence for conduct that the Government did not charge as a crime. In

//

United States v. Griffith, the Tenth Circuit stated that relevant conduct must relate to the count of conviction:

> Relevant conduct under the Guidelines thus "'comprises more, often much more, than the offense of conviction itself, and may include uncharged and even acquitted conduct.'" United States v. Altamirano-Quintero, 511 F.3d 1087, 1095 (10th Cir. 2007) (quoting United States v. Allen, 488 F.3d 1244, 1254-55 (10th Cir. 2007)). Nonetheless, relevant conduct "still must relate to the offense of conviction."

Id., 584 F.3d 1004, 1012 (10th Cir. 2009). Or, as stated in United States v. Ortiz, 431 F.3d, 1035, 1040-41 (7th Cir. 2005):

> In assessing whether offenses are part of the same course of conduct, we look to whether there is "a strong relationship between the uncharged conduct and the convicted offense, focusing on whether the government has demonstrated a significant 'similarity, regularity, and temporal proximity.'" United States v. Acosta, 85 F.3d 275, 281 (7th Cir.1996). Offenses are part of the same course of conduct if they are "part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3(a)(2), App. Note 9. Moreover, "section 1B1.3(a)(2) must not be read to encompass an offense that is similar in kind to the offense of conviction but that does not bear the required relationship to that offense.": United States v. Patel, 131 F.3d 1195, 1204 (7th Cir.1997); see also United States v. White, 888 F.2d 490, 500 (7th Cir.1989). We have held that the mere fact that the defendant may have engaged in other drug transactions "is not sufficient to justify treating those transactions as 'relevant conduct' for sentencing purposes." United States v. Crockett, 82 F.3d 722, 730 (7th Cir.1996).

Again, the charges in this case are that Mr. Mannino possessed and/or transferred machine guns. The alleged solicitation of murder has been tacked on to increase his sentence. This is a serious crime to which the Government should be required to be put to its proof if Mr. Mannino is to be sentenced for it. The questions here are, then, did Mr. Mannino solicit someone's murder during the commission of the offense of convictions (No), in preparation for the offense (No), or in the course

of attempting to avoid detection or responsibility for that offense (No)? Therefore, the uncharged, unproven conduct for which the sentence offered in the PSR is offered should not be applied.

The PSR correctly indicates that Mr. Mannino has no criminal history. The Guidelines range for offense level 18, criminal history category 1 is 27-33 months. With acceptance of responsibility, the range is 18-24 months. If, and this is not conceded, the two level enhancement for three firearms (Paragraph 86) is applied, the eventual Guidelines range is still only 24-30 months.

However, the range proposed in the PSR, with a total offense level of 27 is 70-87 months which is more than twice the amount of potential time to be served that was never part of the negotiations or included in the plea agreement.

### B.     Concealment of Bankruptcy Assets

The Guidelines calculation for this count is almost irrelevant because the adjusted offense level is 20 (see PSR Paragraph 99) if the loss is more than $400,000. However, the extent of that loss will also be an issue at sentencing. Mr. Mannino contends that he rectified the mistakes in his initial bankruptcy filing by preparing and filing amended schedules.

The real issue here is whether the loss exceeded $400,000. Mr. Mannino contends that it does not.

## III     3553(A) FACTORS

Chris Mannino is a complex and garrulous man. He was a chiropractor who held both federal firearms and federal explosive licenses. He is very well thought of by certain members of the community, but he tends to be rather polarizing.

//

Now 56 years old, married and the father of Alora Grace Mannino who is now four years old, Mr. Mannino's primary goal is to be reunited with his family.

18 USC 3553(a) compels this court to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of the statute. In doing so the court is to consider the nature and circumstances of the offense – illegal possession and transfer of firearms and concealment of assets. He has relinquished his federal licenses and entered into the plea agreement in order to protect his wife from prosecution. (She is specifically mentioned on page 2 of the plea agreement.)

The Government is trying to increase the seriousness of the offenses without trying Mr. Mannino for the charge of solicitation of a murder. As indicated above in the discussion of relevant conduct, the government should not be allowed to sentence an individual for conduct that is far outside the scope of that to which he pled guilty, without charging him and trying him for that conduct. As indicated by the Guidelines themselves the charges are far less serious than the purported relevant conduct.

Both the loss of his licenses and the incarceration imposed to date are more than sufficient to deter Mr. Mannino from possessing or transferring any firearms, including machine guns, in the future. Likewise, the punishment inflicted so far coupled with restitution and the failure to obtain a bankruptcy discharge are more than sufficient to deter Mr. Mannino from even contemplating seeking bankruptcy protection in the future.

Again, this matter comes down to the oblique manner in which Mr. Mannino is being prosecuted for supposedly soliciting a murder. No doubt the Government has its reasons for not charging him with that crime, but this subterfuge should not be allowed to stand. He was informed by counsel that the Guideline ranges for his offense were 24-30 months that is the only principled

sentence the government should be allowed to seek in this matter. In United States v. Vila, 456 F.3d 796 (7th Cir.2006) Judge Posher criticized a "relevant conduct" sentence with the following language: "So far as appears, his three acts, two of which were used as relevant conduct to jack up his sentence for the third, were wholly unrelated to each other." Id., at 798.

That is exactly what is before the court; the government is using "relevant conduct" unrelated to the underlying charge to jack up the sentence. Far better for society and for the integrity of the judicial system, to sentence Mr. Mannino for those acts which he admitted and for which he accepted responsibility. If the United States wants to have him sentenced for solicitation of murder, it should at least charge and try him for that crime.

## IV  CONCLUSION

During plea negotiations, at the time he changed his plea, and until he received a draft presentence report, Mr. Mannino was informed and reassured that he was pleading to charges which carried guideline sentencing ranges of 24-30 months. This is the range the court should consider in imposing sentence in this matter. The "relevant conduct" included in the presentence report is not relevant to the crimes to which Mr. Mannino pled.

Given his criminal history, the community condemnation of his conduct, the loss of licenses and the forcible estrangement from his family due to the incarceration he has already endured, 24 months is more than sufficient punishment for the crimes with which he was actually charged and for which he accepted responsibility.

//

//

USA v. MANNINO, 4:13-cr-00021-SLG
DEFENDANT'S SENTENCING MEMORANDUM
Page 9 of 10

Filed separately, as a supplement to this document are copies of letters received from various individuals in support of Mr. Mannino.

Dated this 18th day of February, 2015, at Anchorage, Alaska.

s/ D. Scott Dattan
Attorney for Defendant, G. Christopher Mannino
2600 Denali Street, Suite 460
Anchorage, Alaska 99503
Phone: (907) 276-8008
Fax: (907) 278-8571
E-mail: dattan@dattanlaw.com
Alaska Bar No. 8411111

**CERTIFICATE OF SERVICE**
I hereby certify that on February 18, 2015, a copy of the foregoing DEFENDANT'S SENTENCING MEMORANDUM was served electronically on

Joseph W. Bottini

s/ D. Scott Dattan